UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MINH TIEU,<br><br>Petitioner,<br><br>v.<br><br>WARDEN,<br><br>Respondent. | CAUSE NO. 3:26cv1001 DRL-SJF |

OPINION AND ORDER

Immigration detainee, Minh Tieu, appearing *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing that he is being unlawfully detained in the custody of United States Immigration and Customs Enforcement (ICE). The respondent answered the petition, and Mr. Tieu replied. The court now grants the petition.

Mr. Tieu was born in Vietnam in 1960 [10-1]. He arrived in the United States in 1981 as a refugee and later became a lawful permanent resident. In 1996, he was convicted of murder and sentenced to 45 years in prison. While incarcerated, an immigration judge entered an order of removal to Vietnam on June 7, 1999. Both parties waived appeal. After Mr. Tieu completed his criminal sentence in March 2019, he was transferred to ICE custody for removal. He was detained for about four months before being released on an order of supervision because ICE could not obtain a travel document for him to return to Vietnam.

In March 2026, ICE revoked Mr. Tieu's order of supervision and arrested him, purportedly to execute his final order of removal [10-1]. ICE served him with a Notice of Imminent Removal on March 19, 2026, stating ICE was in possession of a travel document

and expected to remove him in March 2026. Three months later Mr. Tieu was still in custody, and ICE conducted a custody review on June 17, 2026, determining that Mr. Tieu was a danger to the community and would remain in detention pending his removal.

Mr. Tieu filed this habeas petition in July 2026, about four months after he was re-detained, arguing that his continued detention was unreasonable because his removal was not reasonably foreseeable. He reported that he completed travel document applications in May and June, but no travel document has been acquired. He argued Vietnam has been historically reluctant to repatriate pre-1995 Vietnamese immigrants to the United States. He stated that little had changed between now and ICE's initial attempt to remove him in 2019. He asserted that despite a 2020 Memorandum of Understanding between the United States and Vietnam to repatriate pre-1995 immigrants, only four pre-1995 immigrants were removed to Vietnam under the 2020 Memorandum between September 2021 and September 2023, indicating that his chances of his removal were slim.

In answering the petition, the Warden (through federal counsel) provides a declaration from a deportation officer, who attests that as of August 3, 2026, ICE Enforcement and Removal Operations (ERO) is facilitating the completion of a travel document request [10-2]. The officer explains that once the travel document request is completed, the request will be forwarded to the ICE ERO attaché in Vietnam, who is responsible for sending the request to the Vietnamese Government. The Vietnamese government then has 30 days to issue the travel document from the date they receive the request from the ICE ERO attaché. Additionally, the Warden cites to another case in this district in which ICE ERO successfully obtained travel documents for a pre-1995 Vietnamese

immigrant. *See Le v. Warden*, No. 3:26cv85, 2026 WL 1234834 (N.D. Ind. May 4, 2026) (Brisco, J.). The court is also aware of one of its own. This, he argues, prevents Mr. Tieu from relying on his status as a pre-1995 Vietnamese immigrant to show removal is not reasonably foreseeable.

In reply, Mr. Tieu reiterates that ICE has taken no concrete steps toward his removal to Vietnam and no travel documents have yet been requested. Mr. Tieu notes that while he completed his travel document application in May and June, the August declaration from ICE makes no reference to these applications. Further, he cites to thirteen cases from this district (either from this presider or some from Judge Cristal Brisco) in which pre-1995 Vietnamese immigrants were released on habeas because their removals were not reasonably foreseeable. *See Hua v. English*, No. 3:26cv548, 2026 WL 2149404 (N.D. Ind. July 27, 2026); *Doan v. Mullin*, No. 3:26cv182, 2026 WL 1815230 (N.D. Ind. June 24, 2026); *Mai v. English*, No. 3:26cv171, 2026 WL 1745722 (N.D. Ind. June 17, 2026); *Tang v. English*, No. 3:26cv203, 2026 WL 1214504 (N.D. Ind. May 4, 2026); *Le v. English*, No. 3:26cv290, 2026 WL 1214509 (N.D. Ind. May 4, 2026); *Nguyen v. Warden*, No. 3:26cv83, 2026 U.S. Dist. LEXIS 97622 (N.D. Ind. May 4, 2026); *Thach v. English*, No. 3:26cv309, 2026 WL 1109344 (N.D. Ind. Apr. 24, 2026); *Ho v. Eng.*, No. 3:26cv238, 2026 WL 1004291 (N.D. Ind. Apr. 14, 2026); *Pham v. Noem*, No. 3:26cv37, 2026 WL 962586 (N.D. Ind. Apr. 9, 2026); *Su v. English*, No. 3:26cv299, 2026 WL 872463 (N.D. Ind. Mar. 30, 2026); *Dang v. English*, No. 3:26cv177, 2026 WL 746385 (N.D. Ind. Mar. 17, 2026); *Luu v. Noem*, No. 3:26cv132, 2026 WL 746297 (N.D. Ind. Mar. 17, 2026); *Vu v. English*, No. 3:25cv999, 2026 WL 194171 (N.D. Ind. Jan. 26, 2026).

The Warden first argues that the court lacks subject matter jurisdiction over Mr. Tieu's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For reasons given before, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Tieu began when he was released from prison in 2019 and turned over to immigration authorities. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] Given his criminal conviction, Mr. Tieu's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533

U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely

because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Mr. Tieu was detained for about four months in 2019 until he was released on a supervision order. ICE could not then obtain a travel document for him to return to Vietnam. That period of detention, and its conclusion, complied with the standards from *Zadvydas*, and no one has challenged this. From March 2019 until March 2026, when he was detained again, neither side reports any progress toward his removal. The headwinds with Vietnam are well known at this point, and the exceptions are rarer than not. At this point, with the number of habeas petitions to date, the government is fully aware that it takes more details than "we are working on it" to oppose habeas relief.

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

Mr. Tieu has met his burden, whereas the government has not. Even after his detention in March 2026, the government has still not requested travel documents. As of August 2026, ICE reported that it "is currently engaged in efforts to effectuate [Mr. Tieu]'s removal to Vietnam" [10-2]. There may be hope in this, but the court cannot find this to mean, given this record, that there is a reasonable likelihood of removal in the foreseeable future. What exactly has stymied the government's ability to seek or secure travel documents from March to August 2026 remains unexplained. The process might well take time, but the government offers no insight into exactly why here. For someone that the government views as a danger, perhaps based on his prior conviction, it would seem incumbent on the government to act swiftly to address this one.

Whatever hope of removal may have existed in March 2026, much time has passed to get now to November 2026. Even two months after the last report from the government, there has been no update to suggest that this hope of receiving travel documents has any real traction, why it has taken so long already without an answer, what specific efforts have been devoted to pursue this particular request, or what other steps have been (or will be) taken to make removal a reasonably foreseeable prospect, much less that there are, tied up in any of this, foreign policy judgments that merit unique deference.

The Warden argues the past difficulties in repatriating pre-1995 Vietnamese immigrants do not mean that Mr. Tieu cannot be repatriated. To that point, Mr. Tieu's status is not dispositive here. As the court has previously noted, "[n]umerous habeas petitions in the context of immigration seem to have revealed that repatriation to Vietnam for pre-1995 immigrants faces unique headwinds, notwithstanding a 2020 Memorandum of

Understanding between the United States and Vietnam," while at the same time noting that there are occasional reports of greater success of repatriating pre-1995 immigrants to Vietnam. *See, e.g.*, *Tang v. English*, No. 3:26cv203, 2026 WL 1214504, 3 (N.D. Ind. May 4, 2026). The difference here is one of proof, as with any situation in which a party has a burden. There is no evidence specific to Mr. Tieu suggesting Vietnam would view a travel document request for him favorably at whatever point one might be submitted for consideration. Mr. Tieu already has been in custody beyond any presumptively reasonable period, and the record here suggests that he will not be removed soon.

Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision. Whatever concerns the court may retain, the fact of the matter is that the government followed this protocol before, and removal efforts remain well within the government's hands to bring to fruition. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

For these reasons, the court:

(1) GRANTS the petition (ECF 2) to the extent that the court ORDERS the respondent to release Minh Tieu on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **November 4, 2026**, and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Minh Tieu's release.

SO ORDERED.

November 3, 2026

*s/ Damon R. Leichty*
Judge, United States District Court